


DANIEL G. BOGDEN
United States Attorney
CRANE M. POMERANTZ
Assistant United States Attorney
MARK N. KEMBERLING
Special Assistant United States Attorney
Lloyd D. George United States Courthouse
333 Las Vegas Boulevard South, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336/Fax: (702) 388- 6418

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>DIPAK DESAI, MD<br>Defendant. | 2:11-CR-00166-LRH-CWH<br><br>**PLEA MEMORANDUM** |

Plaintiff United States of America, by and through Daniel G. Bogden, United States Attorney, Crane M. Pomerantz, Assistant United States Attorney, Mark N. Kemberling, Special Assistant United States Attorney, the defendant, Dipak Desai, MD and the Defendant's attorneys, Richard Wright, Esq. and Margaret Stanish, Esq., submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

## I. SCOPE OF AGREEMENT

The parties to this Plea Agreement are the United States of America and Dipak Desai (the defendant). This Plea Agreement binds the defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the Defendant.

## II. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A. Guilty Plea. The Defendant knowingly and voluntarily agrees to plead guilty to Count One of the Indictment charging the defendant with Conspiracy to Commit Health Care Fraud, in violation of Title 18, United States Code, Section 371 and Count 24 of the Indictment charging the defendant with Health Care Fraud, in violation of Title 18, United States Code, Sections 1347 and 2.

The Defendant also agrees to the forfeiture of the property set forth in this Plea Memorandum and in the Forfeiture Allegation of the Criminal Indictment.

B. Waiver of Trial Rights. The Defendant acknowledges that he has been advised of and understands that by entering a plea of guilty he is waiving -- that is, giving up -- certain rights guaranteed to all Defendants by the laws and the Constitution of the United States. Specifically, the Defendant is giving up:

1. The right to proceed to trial by jury on all charges, or to a trial by a judge if the Defendant and the United States both agree;

2. The right to confront the witnesses against the Defendant at such a trial, and to cross-examine them;

3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4. The right to testify in his own defense at such a trial if he so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the Defendant's behalf; and

6. The right to have the assistance of an attorney at all stages of such proceedings.

C. Withdrawal of Guilty Plea. The Defendant will not seek to withdraw his guilty plea after he has entered it in court.

D. Additional Charges. The United States agrees not to bring any additional charges against the Defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States, except that the United States reserves the right to prosecute the Defendant for any crime of violence as defined by 18 U.S.C. § 16.

## III. ELEMENTS OF THE OFFENSES

The elements of Count One, Conspiracy to Commit Health Care Fraud, in violation of Title 18, United States Code, Section 371 are:

1. There was an agreement between two or more persons to commit or attempt to commit at least one crime charged in the information, in this case, health care fraud;

2. The Defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

9th Cir. Crim Jury Instr. 8.20 (2010).

The elements of Count Twenty-Four, Health Care Fraud, in violation of Title 18, United States Code, Section 1347 are:

1. The defendant knowingly executed a scheme to obtain money and property owned and under the custody and control of the federal Medicare program by means of material false or fraudulent representations;

2. The defendant did so with intent to defraud;

3. The defendant did so in connection with the delivery of and payment for health care benefits and services; and

4. Medicare was a public plan or contract, affecting commerce in some way or degree.

18 U.S.C. § 1347

**IV. FACTS SUPPORTING GUILTY PLEA**

A. The Defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B. The Defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt. The Defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C. The Defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D. The Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

Between in or about January 2005 and in or about February 2008, Dipak Desai ("Desai" or the "defendant"), a physician and the owner of the Endoscopy Center of Southern Nevada ("ECOSN"), knowingly and willfully conspired, confederated, and agreed with co-defendant Tonya Rushing, his Chief Operating Officer, and others, to systematically overcharge the federal

Medicare program, the State of Nevada Medicaid program, and other private health insurance companies (the "Private Insurers") for anesthesia billing. Desai and Rushing caused ECOSN to overstate significantly the amount of time its certified registered nurse anesthetists ("CRNAs") spent with patients on a given procedure.

In or about November 2003, Desai and Rushing caused the creation of a separate company, Healthcare Business Solutions ("HBS"), owned by Rushing, to handle the billing for anesthesia services rendered by the CRNAs. HBS received approximately 9% of all money collected for anesthesia services rendered by CRNAs. HBS began billing for anesthesia services on January 1, 2004.

Beginning in or about January 2005, Desai and Rushing caused fraudulent bills to be submitted to Medicare, Medicaid and the Private Insurers that falsely inflated the amount of anesthesia time spent by the CRNAs on the procedures performed at ECOSN. Desai issued a "standing order" that all CRNAs should list at least thirty minutes of anesthesia time in their Anesthesia Record, regardless of the amount of anesthesia time actually spent. Rushing enforced this order, directly instructing at least one CRNA to list more than thirty minutes on the Anesthesia Record they maintained for each procedure, even though the CRNAs did not spend close to that amount of face-to-face time with the patient. With Desai's knowledge and at his direction, Rushing instructed her employees responsible for insurance billing to rely upon the CRNAs Anesthesia Record - the medical record Desai and Rushing had instructed the CRNAs to falsify - when preparing claims for reimbursement to be submitted to Medicare, Medicaid and the Private Insurers.

Desai imposed intense pressure on all ECOSN employees to schedule and treat as many patients as possible in a given day. CRNAs at ECOSN's Shadow Lane clinic regularly performed anesthesia on approximately sixty (60) patients per day. As a result, the CRNAs

almost never spent thirty-one (31) or more minutes with a patient, and could not have possibly done so, given the number of patients each day they had to treat. Defendant Desai knew this.

Desai and Rushing instituted a policy at ECOSN prohibiting the beneficiaries of one of the Private Insurers from being scheduled back to back on the same day. This Private Insurer required that the actual anesthesia time, or the time designated for anesthesia, be submitted along with the claims for reimbursement. Desai and Rushing instructed their employees not to schedule patients of this Private Insurer back-to-back in order to conceal from this Private Insurer the fact that each claim for reimbursement exceeded thirty-one (31) minutes.

On January 29, 2007, the defendant executed his scheme to defraud by causing a false and fraudulent claim for reimbursement to be submitted to the federal Medicare program. The defendant caused an overstated claim for anesthesia services to be submitted to the federal Medicare program for services allegedly rendered to patient E.S.

The parties agree that the readily provable amount of loss is $2,213,550. The defendant admits, however, that the property listed in Section X is any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to violations of Title 18, United States Code, Section 1347, or Title 18, United States Code, Section 371, conspiracy to violate such an offense.

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the Defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the Defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the Defendant's behalf. The Defendant expressly

waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

## VI. APPLICATION OF SENTENCING GUIDELINES PROVISIONS

A. Discretionary Nature of Sentencing Guidelines. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B. Offense Level Calculations. The parties stipulate to the following calculation of the Defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and the parties stipulate that no other specific offense characteristics, enhancements or reductions apply:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1(a)(1)): | 6 |
| Enhancements: | |
| The loss amount is greater than $1,000,000 but less than $2,500,000. (U.S.S.G. § 2B1.1(b)(1)(I)) | 16 |
| The defendant abused a position of trust (U.S.S.G. § 3B1.3) | 2 |
| The defendant was an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive | 4 |
| Adjusted Offense Level | 28 |
| If applicable, a reduction for Acceptance of Responsibility (USSG § 3E1.1) (*see subsection C. below*): | -3 |
| Total Offense Level: | 25 |

C. Reduction of Offense Level for Acceptance of Responsibility. Under USSG §3E1.1(b), the United States will recommend that the Defendant receive a two-level downward adjustment for acceptance of responsibility, and will move the Court for an additional one-level offense reduction unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the Defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

These Sentencing Guidelines provisions, if applied, will result in a total offense level of either 26 (if two-level adjustment applies) or 25 (if two-level adjustment and additional one-level adjustment both apply.

D. Criminal History Category. The Defendant acknowledges that the Court may base his sentence in part on the Defendant's criminal record or criminal history. The Court will determine the Defendant's Criminal History Category under the Sentencing Guidelines. The parties agree that the sentence imposed in *Nevada v. Dipak Desai*, Case No. 10C265107-1, does not constitute a prior offense for purposes of calculating criminal history because the state case involved offense conduct that was part of the same course of conduct relevant to the instant offense pursuant

to USSG 1B1.3(a)(1) and 4A1.2(a)(1).

E. Relevant Conduct. The Court may consider all other relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range. However, the parties agree there is no other readily provable relevant conduct.

F. Additional Sentencing Information. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the Defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The Defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the Defendant to withdraw his guilty plea.

## VII. APPLICATION OF SENTENCING STATUTES

A. Maximum Penalty. The maximum penalty for violating Title 18, United States Code, Section 371 (Conspiracy) is not more than five (5) years imprisonment, a fine of not more than two hundred fifty thousand dollars ($250,000), or both. In addition, the Defendant is subject to supervised release for a term not exceeding three (3) years.

The maximum penalty for violating Title 18, United States Code, Section 1347 (Health Care Fraud) is not more than ten (10) years imprisonment, a fine of not more than two hundred fifty

thousand dollars ($250,000), or both. In addition, the Defendant is subject to supervised release for a term not exceeding three (3) years.

B. Factors Under 18 U.S.C. § 3553. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the Defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the Defendant's sentence.

C. Parole Abolished. The Defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

D. Supervised Release. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not to exceed three years. 18 U.S.C. § 3583(b). Supervised release is a period of time after release from prison during which the Defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of five (5) years on Count 1 and ten (10) years on Count 24.

E. Special Assessment. The Defendant will pay a $100.00 special assessment per count of conviction at the time of sentencing, for a total of $200.00.

F. Fines. The Defendant agrees that the Court may impose a fine due and payable immediately upon sentencing.

G. Restitution. In exchange for benefits received under this Plea Agreement, the Defendant agrees to make restitution in the amount of $2,213,550. The amount of restitution, if any, will be applied towards the losses the defendant caused by his participation in schemes or offenses, whether charged or uncharged, pled to or not, and by all of his relevant conduct. 18 U.S.C. § 3663(a)(3). In return for the Defendant agreeing to make restitution for relevant conduct, the United

States agrees not to bring charges against the Defendant for the conduct giving rise to the restitution amount. The defendant understands that any restitution imposed by the Court may not be discharged in whole or in part in any present or future bankruptcy proceeding. The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

**VIII. POSITIONS REGARDING SENTENCE**

A. Length of Sentence. Both parties agree to seek a sentence within the applicable sentencing guideline range as determined by the Court, unless the Defendant commits any act that could result in a loss of the downward adjustment for acceptance of responsibility, in which case the United States may recommend any term up to the statutory maximum. Neither party will seek a variance, pursuant to 18 U.S.C. § 3553, or a departure, pursuant to USSG § 4A1.3(b)(1), from any sentence the Court may impose.

The Defendant acknowledges that the Court does not have to follow this recommendation. The Defendant also acknowledges that the Court does not have to grant a downward departure based on the Defendant's substantial assistance to the United States, even if the United States chooses to file a motion pursuant to 18 U.S.C. § 3553(e)(1), USSG § 5K1.1, or Fed. R. Crim. P. 35. This Plea Agreement does not require the United States to file any pre- or post-sentence downward departure motion under USSG § 5K1.1 or Fed. R. Crim. P. 35. The United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

The defendant agrees that he will not seek early termination or reduction of his term of supervised release.

B. Concurrent Time. The parties agree that the sentence previously imposed in *Nevada v. Dipak Desai*, 0C265107-1, resulted from offenses that were relevant conduct to the instant offense of conviction under USSG § 1B1.13(a)(1). The parties, therefore, agree that the sentence in the

instant case shall run concurrent to the undischarged sentences in the related case pursuant to USSG § 5G1.3(b). Furthermore, the parties agree that the sentence in the instant case shall be adjusted by the number of days that the defendant has already served on the undischarged terms of state imprisonment since the imposition of the state sentence on October 25, 2013, pursuant to USSG § 5G1.3(b). The defendant reserves the right to argue that the sentence should be further adjusted downward by the number of days that the defendant was in state custody prior to the imposition of the state sentence, which was approximately 319 days and credited as time served against his state sentence. The defendant further reserves the right to argue for a downward adjustment for time served on any portion of the state sentence that may be discharged by the time the sentencing hearing in the instant case under USSG § 5K2.23. The United States reserves the right to oppose these adjustments.

## IX. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the Defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay. The Defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and will release funds and property under his control in order to pay any fine, forfeiture, or restitution ordered by the Court.

## X. FORFEITURE

The defendant knowingly and voluntarily:

A. Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the *in personam* criminal forfeiture money judgment of $2,213,550 in United States Currency (all of which constitutes "property");

B. Abandons or forfeits the property to the United States;

C. Relinquishes all right, title, and interest in the property;

D. Waives his right to any abandonment proceedings, any civil administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any criminal forfeiture proceedings of the property ("proceedings");

E. Waives service of process of any and all documents filed in this action or any proceedings concerning the property arising from the facts and circumstances of this case;

F. Waives any further notice to him, his agents, or his attorney regarding the abandonment or the forfeiture and disposition of the property;

G. Agrees not to file any claim, answer, petition, or other documents in any proceedings concerning the property;

H. Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, and 32.2, the constitutional requirements, and the constitutional due process requirements of any proceedings concerning the property;

I. Waives his right to a jury trial on the forfeiture of the property;

J. Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including but not limited to (1) constitutional or statutory double jeopardy defenses; and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

K. Agrees to the entry of an Order of Forfeiture of the property to the United States;

L. Agrees that forfeiture is immediately due and payable and subject to immediate collection by the United States;

M. Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any

assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to the abandonment or the forfeiture; and

N. The defendant acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than, the amount of restitution.

**XI. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS**

A. Plea Agreement and Decision to Plead Guilty. The Defendant acknowledges that:

(1) He has read this Plea Agreement and understands its terms and conditions;

(2) He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

(3) He has discussed the terms of this Plea Agreement with his attorney;

(4) The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

(5) He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The Defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The Defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

B. Waiver of Appeal and Post-Conviction Proceedings. The Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which

the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The Defendant reserves only the right to appeal any portion of the sentence that is greater than the Sentencing Guidelines range as calculated by this Plea Agreement, or an unlawful sentence imposed in violation of the law as provided in 18 U.S.C. § 3742(a)(1).

The Defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. Removal/Deportation Consequences. The Defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The Defendant has also been advised that if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The Defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The Defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

. . .

. . .

. . .

## XII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the Defendant, the Defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN,
United States Attorney

DATE ______________

______________________
CRANE M. POMERANTZ
Assistant United States Attorney
MARK N. KEMBERLING
Special Assistant United States Attorney

DATE 2/11/15

______________________
RICHARD WRIGHT, ESQ.
MARGARET STANISH, ESQ.
Counsel for Defendant DESAI

DATE APRIL 2, 2015

______________________
DIPAK DESAI, MD
Defendant

## XII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the Defendant, the Defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN,
United States Attorney

DATE ______________

______________________________
CRANE M. POMERANTZ
Assistant United States Attorney
MARK N. KEMBERLING
Special Assistant United States Attorney

DATE ______________

______________________________
RICHARD WRIGHT, ESQ.
MARGARET STANISH, ESQ.
Counsel for Defendant DESAI

DATE ______________

______________________________
DIPAK DESAI, MD
Defendant